IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL PAUL NELSON )
)
Plaintiff, )
)
v. ) 1:23CV488
)
ROCKINGHAM COUNTY, et al., )
)
Defendants. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This civil rights action is before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #25] filed by Defendants Town of Madison, Officer Keith Benfield, and Officer Matthew Michael (hereinafter "moving Defendants"). In this case, Plaintiff brings claims against the moving Defendants under the Fourth Amendment and under the Americans with Disabilities Act and Rehabilitation Act, all related to his arrest on February 21, 2020. Plaintiff also brings separate claims against the other remaining Defendants based on subsequent incidents while he was in custody. For the reasons set out below, the Court recommends that the moving Defendants' Motion to Dismiss be granted as to Plaintiff's ADA and Rehabilitation Act claims based on the statute of limitations, and that the case be stayed as to the remaining claims in light of Plaintiff's pending trial in state superior court on charges related to his Fourth Amendment claims against the moving Defendants.

I. FACTUAL ALLEGATIONS AND CLAIMS

The Complaint alleges that Plaintiff is a military veteran who suffered multiple traumatic brain injuries while serving in the armed forces, "which have resulted in [Plaintiff's]

blindness, loss of long-term memory, extreme sensitivity to lights, chronic head pain, and chronic debilitating migraines." (Compl. ¶¶ 12, 88, 147.)[1] The Complaint alleges that as a result of these impairments, Plaintiff is disabled within the meaning of the Americans with Disabilities Act ("ADA"). (Compl. ¶¶ 12, 85-86, 88, 149.)

On February 21, 2020, at around 9:40 pm, Plaintiff and his wife were in a van driven by his wife, parked in the parking lot of a Methodist church while playing Pokemon Go, a phone-based interactive game. (See Compl. ¶¶ 14-18, 22-23.) The Complaint alleges that approximately five minutes after the couple arrived in the parking lot, Defendant Officer Keith Benfield of the Madison Police Department arrived in a police car and pulled in behind Plaintiff's van. (Compl. ¶¶ 15, 21.) Plaintiff's wife finished playing her game and started to drive away when Defendant Benfield turned on his police lights and stopped her. (Compl. ¶¶ 22-23.) Defendant Benfield asked Plaintiff and his wife to provide identification and also identified himself as a police officer. (Compl. ¶¶ 24, 28-29, 36.) The Complaint alleges that Plaintiff asked what reasonable suspicion led to Defendant Benfield's stop of the vehicle and Defendant Benfield did not initially answer, but continued to ask for the couple's identification, which they did not provide. (Compl. ¶¶ 30-38.)

According to the Complaint, Defendant Benfield eventually told the couple that they were trespassing on private property. (Compl. ¶ 39.) Other officers, including Defendant Officer Matthew Michael, then arrived on scene and positioned themselves around the van. (Compl. ¶¶ 41-45.) According to the Complaint, Plaintiff's wife eventually provided Defendant Benfield with her driver's license, but she and Plaintiff told Defendant Benfield

---

[1] Citations to the Complaint refer to the Amended Complaint [Doc. #7].

that Plaintiff did not have a driver's license because he was blind. (Compl. ¶¶ 51-53.) The Complaint alleges that Plaintiff's wife eventually rolled down her window and Defendant Benfield then reached into the vehicle, unlocked the doors, and pulled Plaintiff's wife out of the van and handcuffed her. (Compl. ¶ 55-59.)

According to the Complaint, Plaintiff, who remained in the van, told Defendants Benfield and Michael that he was disabled and requested to speak to a disability coordinator, a position with which Defendants Benfield and Michael were unfamiliar. (Compl. ¶¶ 62-64.) The Complaint alleges that Defendant Benfield then entered and searched the van without Plaintiff's permission, and Defendant Michael removed Plaintiff from the van and handcuffed him behind his back, despite Plaintiff's request for what he alleges was a reasonable accommodation under the ADA to not be handcuffed behind his back. (Compl. ¶¶ 65-68, 151-52.)

According to the Complaint, after being handcuffed, Plaintiff again asked what crime he was suspected of committing, and the officers responded that he was trespassing. (Compl. ¶ 72.) The officers checked if Plaintiff's wife had any open warrants and, after finding none, released her. (Compl. ¶¶ 34, 73, 75.) According to the Complaint, Plaintiff continued to refuse to provide any identification because he believed the officers did not have probable cause to stop him. (Compl. ¶ 73.) Finally, Defendants Benfield and Michael arrested Plaintiff and searched him. (Compl. ¶ 74.)

Defendants Benfield and Michael kept Plaintiff in handcuffs and transported Plaintiff to the Rockingham County Magistrate's Office where Plaintiff was brought before a Magistrate, charged with Resisting Officers (N.C. Gen. Stat. § 14-223), and placed in the

3

Case 1:23-cv-00488-LCB-JEP   Document 32   Filed 02/20/24   Page 3 of 14

custody of the Rockingham County Jail on $2,500 bail. (Compl. ¶¶ 90-101.)[2] Plaintiff's wife paid to post his bail and he was released from custody on February 22, 2022. (Compl. ¶¶ 118-122.)

The Complaint alleges that the criminal charges against him were the subject of a bench trial in state district court in October 2020. Plaintiff challenges aspects of that trial, contending that the testifying officer at the trial was not actually present during the incident. Plaintiff was convicted in district court and appealed to state superior court for a trial *de novo*, and the Complaint alleges that the charges "are still pending and were not resolved when this document was filed." (Compl. ¶ 77, 88.)

On February 21, 2023, Plaintiff filed his Complaint with the above allegations in the United States District Court for the District of South Carolina. Plaintiff subsequently filed an Amended Complaint [Doc. #7], before the matter was transferred to this Court on consent of the Parties on June 20, 2023 [Docs. #12, #14, #16, #17].

Based on the above-alleged conduct, the Amended Complaint pleads (1) a § 1983 claim against Defendants Benfield and Michael for detaining Plaintiff without reasonable suspicion under the Fourth Amendment (Compl. ¶¶ 126-137); (2) a § 1983 claim against Defendant Benfield for arresting him without probable cause under the Fourth Amendment (Compl. ¶¶ 138-143); (3) an ADA claim against Defendants Benfield, Michael, and the City of Madison,

---

[2] While in custody in the Rockingham County Jail, Plaintiff continued to make requests for what he alleges were reasonable accommodations under the ADA—mostly related to requests for an ADA coordinator and related to his extreme sensitivity to light—which he alleges were ignored by various other Defendants and officials. (Compl. ¶¶ 92, 107-117.) Plaintiff also alleges that the jailers at the Rockingham County Detention Center were deliberately indifferent to his serious medical needs when they stopped the nurse from providing medical assistance after she informed him that he had dangerously high blood pressure and at risk for a stroke without treatment, and then left him naked in a brightly lit cell for 20 hours without medical care. Because these allegations do not involve the moving Defendants, they are not further summarized here.

4

based on deficient training and performance, primarily for handcuffing Plaintiff behind his back during the arrest in this case (Compl. ¶¶ 144-161); (4) an ADA claim against non-moving Defendants in the Rockingham County Jail (Compl. ¶¶ 162-174).; (5) a § 1983 claim under the Fourteenth Amendment for deliberate indifference to a serious medical need of a pretrial detainee against non-moving Defendants in the Rockingham County Jail (Compl. ¶¶ 175-186); and (6) a Rehabilitation Act claim against Defendant Town of Madison and Defendant Rockingham County, based on a purported failure to train its officers and for denying Plaintiff reasonable accommodations during his arrest and detention (Compl. ¶¶ 187-198).

II.     <u>LEGAL STANDARD</u>

Defendants City of Madison, Officer Benfield, and Officer Michael move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 500 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from

5

Case 1:23-cv-00488-LCB-JEP    Document 32    Filed 02/20/24    Page 5 of 14

conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678; Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023). Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

III. DISCUSSION

Moving Defendants bring various challenges to the Complaint in their Motion to Dismiss, but they can be grouped into two categories: those attacking Plaintiff's Fourth Amendment claims (Defs.' Mot. [Doc. # 25] at 1; Defs.' Br. [Doc. #26] at 6), and those attacking Plaintiff's ADA and Rehabilitation Act claims (Defs.' Mot. at 2; Defs.' Br. at 17).

As discussed below, the Court will recommend that Plaintiff's ADA and Rehabilitation Act claims be dismissed as being time-barred and that Plaintiff's Fourth Amendment claims be stayed in light of Plaintiff's ongoing state criminal proceedings and pending trial.

A. Plaintiff's Fourth Amendment Claims and State Court Proceedings

Plaintiff brings two Fourth Amendment claims against Defendants Benfield and Michael: (1) that Defendant Benfield and Michael unreasonably seized Plaintiff without reasonable suspicion when they stopped Plaintiff's van and demanded identification (Compl. ¶¶ 126-136); and (2) that Defendant Benfield lacked probable cause to arrest Plaintiff for failing to provide identification since they had no basis to demand identification (Compl. ¶¶ 138-142). Plaintiff further alleges that following his arrest by Defendants Benfield and Michael, a state magistrate charged him with violating NCGS § 14-223 (Resist, Delay, or

6

Obstruct), a class 2 misdemeanor for refusing to provide identification to Defendant Benfield. (Compl. ¶ 100.) In addition, Plaintiff alleges that he was subject to a state district court bench trial on October 23, 2020. (Compl ¶ 77.) Plaintiff challenges the witnesses and the sufficiency of his assistance of counsel at that bench trial, but was convicted and has appealed his conviction to the state superior court for a trial *de novo*. (Pl.'s Resp. [Doc. #29] at 14-15.)

Moving Defendants contend that Plaintiff's Fourth Amendment claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that a claim for damages is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can demonstrate that the conviction or sentence has previously been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487; see also Mosk v. Gaston County, 2018 WL 1566339 (W.D.N.C. Mar. 30, 2018) ("Plaintiff alleges in his Complaint that he is innocent of the crimes of which he was convicted, and success on Plaintiff's Section 1983 claims would necessarily imply the invalidity of his convictions. As Plaintiff has not shown that his convictions have already been invalidated, Plaintiff's Section 1983 claim for false arrest is barred by Heck.").

In his Fourth Amendment claims against Officers Benfield and Michael, Plaintiff specifically challenges the same issues that form the basis for the criminal prosecution. Indeed, as the basis for the Fourth Amendment claim in Count 2, Plaintiff contends that

> Mr. Nelson's actions were not intended to resist, delay, or obstruct a police officer but to invoke his rights protected by the US Constitution. Clearly established case law holds that Mr. Nelson's actions can support ***neither*** an

7

> arrest nor conviction for NCGS §14-223 (Resist, Delay, or Obstruct). See State
> v. Humphreys, 853 S.E.2d 789 (N.C. Ct. App. 2020).

(Compl. ¶ 141) (emphasis in original). Plaintiff thus challenges whether the facts could support his conviction, and contends that the prosecution under N.C. Gen. Stat. § 14-223 fails because Officers Benfield and Michael did not have a legal basis to initially detain him and request his identification (as alleged in Count 1), and therefore did not have probable cause to arrest him for failing to provide identification (as alleged in Count 2). Thus, under Heck, a judgment in favor of the plaintiff in this case on the Fourth Amendment claims would necessarily imply the invalidity of his state district court conviction.

In his response, Plaintiff does not address the potential Heck bar, but contends that the case should be stayed while his appeal in state superior court is pending, in light of his right to a trial *de novo* and the potential statute of limitations issues. In this regard, the Supreme Court in Wallace v. Kato has held that the statute of limitations for a § 1983 claim for false arrest/false imprisonment without legal process begins to run "once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges." Wallace v. Kato, 549 U.S. 384, 389 (2007). The Supreme Court explained that

> If there is a false arrest claim, damages for that claim cover the time of detention
> up until issuance of process or arraignment, but not more. From that point on,
> any damages recoverable must be based on a malicious prosecution claim and
> on the wrongful use of judicial process rather than detention itself. Thus,
> petitioner's contention that his false imprisonment ended upon his release from
> custody, after the State dropped the charges against him, must be rejected. It
> ended much earlier, when legal process was initiated against him, and the statute
> would have begun to run from that date.

8

Case 1:23-cv-00488-LCB-JEP   Document 32   Filed 02/20/24   Page 8 of 14

Wallace, 549 U.S. at 390. In Wallace, the Supreme Court further recognized that in some cases a claim would accrue for statute of limitations purposes and a stay would be appropriate until the criminal case ended:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), <u>it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended</u>. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

Wallace at 393-394 (internal citations omitted); see also Richardson v. Union Pub. Safety Dep't Police, No. 7:10-cv-2679-MGL-JDA, 2012 WL 4051826, at *5 (D.S.C. July 27, 2012), report and recommendation adopted, No. 7:10-cv-2679-MGL, 2012 WL 4051513 (D.S.C. Sept. 13, 2012) (holding that a court "may exercise its discretion to grant a stay, instead of dismiss, under Heck until a favorable termination has either been obtained or is no longer available."); Nussbaumer v. Nesbitt, No. 11–cv–6331 Fe, 2011 WL 4828844 (W.D.N.Y. Oct. 7, 2011) (staying plaintiff's false arrest and search and seizure claims, and holding that "conservation of judicial resources makes it prudent that a single determination as to the applicability of Heck be made at the conclusion of all criminal proceedings"); Watts v. Epps, 475 F. Supp. 2d 1367, 1369 (N.D. Ga. 2007) ("Wallace teaches that it is the issuance of a stay—and not the tolling of an action—that is the appropriate prophylactic device to prevent federal courts from undercutting state criminal convictions by preordaining in § 1983 actions the of arrests or seizures.").

In reply, moving Defendants argue for dismissal rather than a stay, and contend that "even if Plaintiff is acquitted in Superior Court, that does not affect the application of Heck

9

to his District Court conviction." On this point, the Court notes that there may be issues of collateral estoppel or preclusion that would continue to apply as a result of the state district court conviction.[3] However, Heck would no longer pose a bar if Plaintiff is acquitted at trial in state superior court or if the conviction is reversed on direct appeal. The Court also notes that the procedural posture of this case is unusual, given the state district court conviction raising a potential Heck bar, but also with a "pending or anticipated criminal trial" in state superior court on the same charges.[4] In addition, because the claims involve false arrest rather than malicious prosecution, dismissal may raise a statute of limitations bar. In these specific circumstances, a stay would allow the Court to appropriately address these issues only where

---

[3] Specifically, the Court notes that there may be issues regarding the preclusive effect of the state district court conviction, even if Plaintiff is acquitted in state superior court. See Mosk v. Gaston County, 2018 WL 1566339 (W.D.N.C. Mar 30, 2018) ("There is no cause of action for false arrest under § 1983 if a plaintiff is convicted following the arrest, even if that conviction is subsequently overturned on appeal, unless the conviction was procured by fraud or other unfair means."). In Hoover v. McDowell County, the Court of Appeals for the Fourth Circuit held that in a claim for malicious prosecution, a plaintiff convicted in North Carolina district court "fails to establish the third element—lack of probable cause" because "absent a showing that the conviction in District Court was procured by fraud or other unfair means, the conviction conclusively establishes the existence of probable cause, even though the plaintiff was acquitted in Superior Court." Hoover v. McDowell County, 155 F.3d 559, 1998 WL 398825 (4th Cir. 1998) (emphasis added) (internal quotations and citations omitted); see also Elabanjo v. Bellevance, No. 1:11CV349, 2014 WL 222097, at *6 (M.D.N.C. Jan. 21, 2014), report and recommendation adopted, No. 1:11CV349, 2014 WL 793791 (M.D.N.C. Feb. 26, 2014) ("The general rule is that [a district court] conviction, even though it was later overturned on appeal, conclusively establishes probable cause for the arrest."); Elkins v. Broome, 328 F. Supp. 2d 596, 598–600 (M.D.N.C 2004) (Plaintiff's guilty verdict in district court established that officer had probable cause to arrest even though judge entered a prayer for judgment continued on payment of court costs and judgment was never entered in the case). However, the Fourth Circuit has recently noted that this rule of preclusion may not apply that broadly in every circumstance, and concluded that, in any event, "North Carolina courts would refuse to give preclusive effect to a judgment that was obtained improperly and later invalidated." Gilliam v. Sealey, 932 F.3d 216, 231-32 and n.9 (2019). The Court can consider these issues further if necessary after the conclusion of the state proceedings.

[4] As a matter of North Carolina law, "[w]hen an appeal of right is taken to the Superior Court, in contemplation of law it is as if the case had been brought there originally and there had been no previous trial. The judgment appealed from is completely annulled and is not thereafter available for any purpose." State v. Sparrow, 276 N.C. 499, 507, 173 S.E.2d 897, 902 (1970).

necessary at the conclusion of the state proceedings. Therefore, the Court concludes that Plaintiff's Fourth Amendment claims should be stayed rather than dismissed.

Moreover, the Court further concludes that even if the state district court conviction did not raise a potential Heck bar, Plaintiff's claims seek declaratory relief that would result in interference with the state criminal proceeding. In Younger v Harris, the Supreme Court recognized the general rule that precludes federal courts from intervening in pending state court proceedings, particularly state criminal proceedings. Younger, 401 U.S. 37, 41 (1971).

> Stated simply, the Younger v. Harris [abstention] doctrine holds that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

Moore v. City of Asheville, 396 F.3d 385, 390 (4th Cir. 2005) (quotations omitted). Here there is an ongoing state criminal proceeding implicating important state interests that would provide Plaintiff an opportunity to raise his federal constitutional claims. Where Younger abstention is appropriate, but where claim seeks monetary relief not available in the state proceeding, the Fourth Circuit has held that "a stay is appropriate to avoid the running of the statute of limitations." Clowdis v. Silverman, 666 F. App'x 267, 270 (4th Cir. 2016) (vacating the district court's order applying Younger abstention to dismiss the plaintiff's damages claims; instructing the court to stay the claims pending the resolution of the issues in state court); Beam v. Tatum, 299 F. App'x 243, 248 (4th Cir. 2008) (per curiam) (same). Therefore, to the

extent Plaintiff's claims are not barred by Heck, the Younger absention doctrine would apply and a stay is appropriate.[5]

B.   ADA Statute of Limitations

The moving Defendants seek dismissal of Plaintiff's ADA and Rehabilitation Act claims on the ground that Plaintiff brought suit outside of the applicable two-year statutes of limitations. (Defs.' Br. at 17-18.) Although the statute of limitations is an affirmative defense, "[a] court may dismiss a complaint on statute of limitations grounds if the time bar is apparent on the face of the complaint." Sanchez v. Arlington Cnty. Sch. Bd., 58 F.4th 130, 135 (4th Cir. 2023) (internal quotation omitted).

The Parties agree that the applicable statutes of limitations under the ADA and Rehabilitation Act would be two years, and Plaintiff does not contest that he knew or had reason to know of the injury forming the basis of his ADA and Rehabilitation Act claims on February 21, 2020. (Defs.'s Br. at 17-18; Pl.'s Br. at 23-24.) Semenova v. Md. Transit Admin., 845 F.3d 564, 567 (4th Cir. 2017) (noting that the Court applies "the same analysis to determine the applicable statute of limitations for Rehabilitation Act" and ADA claims, "[g]iven the substantially similar language between the ADA and the Rehabilitation Act"); Manion v. N.C. Med. Bd., 693 F. App'x 178, 180 (4th Cir. 2017) ("[W]e conclude that the district court was correct that the statute of limitations on Manion's ADA claim was two

---

[5] To the extent that Defendants raise contentions regarding the substance of the claims, including the defense of qualified immunity, consideration of those issues would address the same matters at issue in the state criminal proceeding and would interfere in the state proceedings. Therefore, a stay is preferable as a matter of comity as well as efficiency. The Court also notes that, in order to avoid piecemeal proceedings, the stay will encompass the case as a whole. If Plaintiff would prefer to dismiss his Fourth Amendment claims and instead proceed only on the remaining claims against the non-moving Defendants, he can file a Motion to that effect, for further consideration by the Court.

12

years."); Davis v. Blanchard, 175 F. Supp. 3d 581, 598-99 (M.D.N.C. 2016) (dismissing ADA claim on two-year statute of limitation grounds); Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 699 (M.D.N.C. 2013) (noting that for ADA claims the Court borrows the two-year state statute of limitations in North Carolina from the Persons with Disabilities Protection Act, N.C. Gen. Stat. 168A, but "the determination of the time that a claim accrues is a matter of federal law" and a "claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." (internal quotation omitted)).

In Response, Plaintiff argues that the statute of limitations period has not yet begun to run on his claims and has therefore not expired. It appears that Plaintiff contends that the two-year statute of limitations period has not yet expired for his ADA and Rehabilitation Act claims because:

> (1) the Fourth Amendment claims will not accrue until the criminal claims against him are reversed or dismissed; and
>
> (2) because his ADA and Rehabilitation Act claims are legally and factually related to his Fourth Amendment claims;
>
> (3) his ADA and Rehabilitation Act claims have not yet accrued either.

(Pl.'s Br. at 23-24.) However, the Fourth Amendment claims for false arrest accrued upon the issuance of legal process, see Wallace, 549 U.S. at 389; to the extent Plaintiff could assert claims for malicious prosecution that would not accrue until the criminal conviction is reversed or dismissed, those would be separate claims not asserted here. Moreover, Plaintiff's ADA and Rehabilitation Act claims against the moving Defendants do not require that the criminal prosecution against him be reversed or dismissed. Plaintiff's ADA claims deal with the manner in which Officer Benfield and Officer Michael treated Plaintiff during the course of his

13

physical arrest, particularly hand-cuffing him behind his back. These claims are distinct from any claims regarding an alleged lack of probable cause. Therefore, there is no basis to support Plaintiff's argument that his ADA and Rehabilitation Act claims do not accrue until his criminal proceedings end.

Plaintiff does not allege that he did not know or have reason to know of the injury forming the basis of the ADA and Rehabilitation Act violations when they occurred on February 21, 2020. Moreover, the Complaint itself makes clear that Plaintiff was present for and directly experienced the alleged violations on those dates. For these reasons, Plaintiff's ADA and Rehabilitation Act claims against the moving Defendants—relating to discrete incidents occurring on February 21, 2020 and first raised in a Complaint filed three years later on February 21, 2023—are time-barred by the applicable two-year statutes of limitations. The Court therefore recommends that moving Defendants' Motion to Dismiss be granted and that the ADA and Rehabilitation Act claims (Compl. ¶¶ 144-174, 187-198), be dismissed.

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that the moving Defendants' Motion to Dismiss [Doc. #25] be GRANTED IN PART and that the ADA and Rehabilitation Act claims against Defendants Town of Madison, Keith Benfield, and Matthew Michael be dismissed, and that the case be STAYED pending resolution of Plaintiff's criminal trial in state superior court. Plaintiff is directed to file a Status Report within 30 days of the conclusion of the proceedings in state superior court.

This, the 20th day of February, 2024.

                                                    /s/ Joi Elizabeth Peake
                                                  United States Magistrate Judge